IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GIDRANOO VASQUEZ
Petitioner,

-VS- CRIMINAL CASE NO: 01-00133

UNITED STATES OF AMERICA,
Respondent,

______________________________/

MOTION UNDER 18 U.S.C § 3582(C)(2), pursuant to U.S.S.G. § 2D1.1(a)(3)(C), IN LIGHT OF SUPREME COURT COURT RULLING IN KIMBROUGH v. UNITED STATES, No. 06-6320

COMES NOW, the Petitioner Gidranoo Vasquez acting Pro se and respectfully moves the Honorable Court to grant this motion pursuant to U.S.S.G § 2D1.1(a)(C) and in light of the United States Sentencing Commission making the new sentencing guidelines to Crack Cocaine offenses retroactive beginning March 3, 2008. See the Sentencing Guidelines Amendment 9 for United States Courts 72 Fed. Reg. 28571 (2007), becoming effective on November 1, 2007.

The petitioner is eligible for a sentence reduction based on subsequent Amendment reducing his sentencing guideline range.

The petitioner implores the court to consider all relevant statutory sentencing factor. See 18 U.S.C.A §3582(C)(2); 18 U.S.C.A § 3553(a); and U.S.S.G § 1B1.10

As a preliminary measure, the petitioner hereby assert that he is not an attorney and does not have any legal of professional backgrouud pertaining to drafting or filing material. The petitioner prays that the honorable court would literally construe his motion inlight of Supreme Court rulings under Haines v. Kermer, 404 U.S 519, 30 L.Ed 2d 652 (1972); Cruz v. Beto, 405 U.S. 319 (1972).

As squarely put by the court in Soto v. Walker, 441 F.3d 169 (2nd cir. 1995), Pro se motion must be literally construed and interpreted to raise the strongest argument that they suggest (Id at 173). the allegations made herein are serious and constitute very thorney issues and questions. This shall require the court to proceed with caution. Therefore, this pleading is the equivalent of an affidavit and a verified complaint. As such, this action cannot be subjected to summary judgment as a matter of law in this court, and an evidentiary hearing shall be required to establish a record on disputed factor See Hooks v. Hooks, 171 F.2d 935, 945-46 (6th cir 1985)(verified complaint in equivqlent to an affidavit and protected from summary judgment. citing Davis v. Zahradnick, 600 F.2d 458-60 (4th cir. 1979 ); Williams v. Griffin, 952 F.2d 820, 823 (4th cir. 1991); James v. Giles, 221 F.3d 1074, 1078 (9th cir. 2000), (Pro se litigations are entitled ..." an opportunity to Amend the complaint to overcome any deficiency . . . ); James v. Plier, 269 F.3d 1124 (9th cir. 2001).

## JURISDICTIONAL STATEMENT

The jurisdiction of this Honorable court is revoked pursuant to 18 U.S.C.A § 3582(C)(2), permitting petitioner in custody under

sentence requested for a sentence reduction based on subsequent Amendment reducing his sentencing Guideline range crack cocaine offenses retroactive, sentence imposed by the district court. This Honorable Court has vested subject matter jurisdiction to entertain this cause of action.

The petitioner was charged in the United States District Court for the District of Rhode Island with two indictments for federal criminal violation in distributed over 50grams of cocaine base, in violation of 21 U.S.C. 841(a)(1) and 21 U.S.C § 841(b)(1)(A), and that he conspired to distribute and possess with intent to distribute the same, in violation of 21 U.S.C. 846.

Mr. Vasquez was found guilty by a jury (mary M. Lisi, J.), on April 3, 2002, and was sentenced on June 28, 2002, to a term of imprisonment of 121 months on each count, to run concurrently (with a recommendation of drug treatment), aterm of supervised release of 5 years, and if deported upon release from incarceration. to remain outside the United States for the duration of his supervised release. The court also imposed a special assessment of $200.

A notice of appeal was timely filed on July 3, 2002.

**ARGUMENT PRESENTED**

(1). The petitioner submits that he is eligible for a sentence of two level reduction pursuant to U.S.SG. § 2D1.1(a)(3)(c), in light of Supreme Court ruling in Kimbrouch v. United States, No. 06-63330,

and Gall v. United States, No. 06-7949 new drug quantity table.

(2). The court should consider the Advisory guidelines along with all relevant factors under 18 U.S.C. § 3553 (a) and 3661 in determinig a sentence that is no greater than necessary to achieve the purpose of sentencing.

(3). The decision in Supreme Court Ruling is Kimbrough v. United States, U.S. NO. 06-6330

## STATEMENT OF FACTS AND STATEMENT OF THE CASE

The petitioner, was a drug carrier, a "mule," in a single cocaine transaction arranged, negotiated, and organized by one Juan Castillo. Initially, the government had no interest in petitioner - he just happened to be carrying for Mr. Castillo when government agents and an undercover informant were present.

According to the agents , on November 30, 2001, the government's informant drove to and entered the Jasm Hair Salon on Cranston Street, in providence, Rhode Island. 4/2/02 Trn. at 32, 105. His assignment waas to buy drug from "Raphy," with whom he made contact inside the Jasm. Raphy placed a phone call, and shortly Mr. Castillo arrived. 4/2/02 Trn. at 78-79.

Mr. castillo and the informant - who was wearing a hidden transmitter being monitored by government agents- stepped out onto the sidewalk, and negotiated a deal. They discussed and agreed on price and quantity. Mr. Castillo told the informant that Castillo would go get the drugs, and that the informant should wait at the Jasm for Castillo to come back with the drugs 4/2/02 Trn. at 33-34, 58, 62-65, 80, 105.

Mr. Castillo got into his light blue car, which was parked in front of the Jasm. He drove off with Mr. Vasquez, the defendant here, in the passenger seat. 4/2/02 Trn. at 34, 81, 105. Several hours later, Mr. Castillo returned to the Jasm in blue car with Mr. Vasquez again in the passenger seat and parked behind the informant's car. 4/2/02 Trn. at 35, 66, 82, 105. During the hiatus, Mr. Castillo spoke with informant several times by cell phone. 4/2/02 Trn. at 82,83.

While Mr. Castillo was getting out of his car and returning to the sidewalk in front of the Jasm, Mr. Vasquez got out, walked to the informant's car, and got in. Mr. Vasquez handed Mr. Vasquez a sum of cash, the serial numbers which had been previously recorded by government agents. The transaction lasted about half a minute. The informant and Mr. Vasqez then got out, went to the Jasm, and met Mr. Castillo and Raphy on the sidewalk. 4/2/02 Trn. at 35, 83-84, 105-106, 120. There, the informant gave Raphy $100 for the introduction. 4/2/02 Trn. at 84.

A few minutes later, Mr. Castillo got back into his blue car, again with Mr. Vasquez in the passenger seat, and drove off. The police followed, shortly stopping Mr. Castillo on the pretext of minor motor vehicle violation, and then arrested him for driving without a license. They allowed Mr. Vasquez to take care of the car, which he drove directly back to the Jasm. 4/2/02 Trn. at 35-36, 67-69, 107-08, 122-25. Upon searching Mr. Castillo following his driving arrest, the police found all the marked bills the informant had given Mr. Vasquez. 4/2/02 Trn. at 125.

The government later arrested Mr. Vasquez on a warrant. After a one day trial, a jury found Mr. Vasquez guilty of selling cocaine. He was sentenced to One month greater than the minimum-mandatory 10 years.

(1) **Herein this case, the petitioner submit that he is eligible for a sentence reduction of two (2) levels pursuant to U.S.S.G § 2D1.1 (a)(3)(c) in light of the United States Sentencing Commission's new sentencing guidelines for crack cocaine offenses that are retroactive, effective March 3, 2008**

The petitioner submits in this case that his level of offense has been reduced to level 30 pursuant to the new drug quantity table, the level of offense of at least 50 grams but less than 50 grams of cocaine base falls in a level 30, with a range of 97-121 months sentence, with a criminal History Category I, as in petitioner's case.

In the present situation, the minimum mandatory sentence varies in a considerable manner with conformity with the statutory minimum, because in conformity with the amount of drugs, in this case cocaine base (crack) is how the minimum mandatory is determined for sentencing. Today under the New Amendment per the retroactivity, level 32 goes from 150 grams to 500 grams of crack cocaine, nevertheless, this level is the minimum limit of where the range or level of the statutory code under the § 841 (b)(1)(A) that establishes a minimum mandatory (10) ten years and a maximum of life and the range of guidelines go from 121 - 151 months.

Nevertheless, when the quantity of drugs go from 50 to 150 grams, as in this case, today, the petitioner have not violated, or can not

be charged with the § 841(b)(1)(A), but with the statutory that will support petitioner's conviction which is the § 841(b)(1)(B), that goes from 20 grams of cocaine base up to 150 grams of cocaine base. As the new statutory guidelines table that establishes a minimum of (5) years and a maximum of 40 years and its limited within the level of the guidelines table, from level 26 up to level 30. This case falls inside the limits of level 30, that with the code of statutory carries a minimum mandatory of 5 years and a maximum of 40 years. But inside the limits of the guidelines table falls inside the range of 97 t0 121 months. That is to say that the minimum mandatory in this case at this moment is not 10 ten years as in date of June 28, 2002, where petitioner was sentenced under the 841(b)(1)(A), but 5 years . See United States v. Eric Jose Duran-Colon, docket no. 06-0975-CR, who was sentenced by judge Micheal B. Mukasey, when he was chief judge at the Southern District Court of New York, on Feburary 21, 2006, to 84 months.

At the sentencing hearing judge Mukasey, who is today is attorney Ge3neral of the United States, determined and decided that Duran-Colon was involved in a conspiracy with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C § 841(b)(1)(B), a statutory that carries a minimum mandatory of 5 years and a maximum of 40 years. In the hearing, judge Mukasey determined by preponderance of the evidenence and with conformity with the guidelines table, that Duran-Colo n was involved in an offense whose quantity of heroine raised from 700 to 1,000 grams, which offense level was 30 in the table, in a range equal to mine this days of 97-121 months and it should be noted that Duran-

Colon went to trial, just as petitioner did, which an adjustment did not correspond, for accepting responsibility, or the safety valve, which Duran-Colon never used.

Nevertheless, Judge Mukasey, on that occasion imposed on defendant Duran-Colon a sentence of 84 months, taking into consideration the factor enumerated in 18 U.S.C.§ 3553(a) and assuming that Duran-Colon was in level 30 of the offense level that is the maximum limit under § 841(b)(1)(B), that establishes a maximum mandatory of 5 years and no of 10 years as it is established by § 841(b)(1)(A) in level 32, This is petitioner's situation today, nevertheless,, judge Mukasey, who is the attorney General of the United States in a public declaration, Wednessday December 12, 2007, he opined and considers that the defend-ants that have mandatory minimum sentences will not be benefited with this new amendment which constitutes a contradiction and an equisophical interpretation, accomodating and erroneous of § 841(b), because on the decision latter in the Duran-Colon case contradicts his declarations and the declaration about this issue of the guideline commission in cogress. In this sense of conformity with the equal protection clause prohibits selective enforcement of the law based on considerations such as race. United States v. Frazier, C.A. 8(NEb.) 2005, 391 F.3d 612. Constitu-tional law.

Conscious exercise of some selectivity in enforcement is not per se a violation of this clause. U.S. v. Blitstein, C.A. 10 (Colo) 1980, 626 F.2d 774, certiorari denied 101 S.ct 898, 449 U.S 1102, 66 C.A.Mo. 1968, 397 F.2d 864; Delaney v. Gladden, C.A. Or. 1968, 397 F.2d 17,

certiorari denied 89 S.ct 660, 393 U.S. 1040, 21 L.Ed. 2d 585; State v. Anderson, 1968, 159 N.W.2d 892, 280 Minn, 461 Criminal Law 37.10(1)

Selective prosecution defence involves the equal protection component of this clause. U.S v. Peskin, C.A.7 (III) 1975, 527 F.2d 71, certiorari denied 97 S.ct. 63, 429 U.S. 818, 50 L.Ed . 2d 79.

Government is permitted conscious excercise of some selectivity in enforecement of its criminal laws but any systematic discrimination in enforcement or unjust and illegal discrimination between persons in similar circumstances violates equal protection clause and renders prosecution invalid. U.S. v. Berrigan, C.A.3 (Pa.) 1973, 482 F.2d 171. see, also, U.S. V. Brown Transport Corp., D.C.Ga. 1978, 448 F.Supp. 773; Giant of Maryland, Inc. v. State's Attorney for Prince George's County, 1964, 204 A.2d 64, 236 Md. 349 appeal dismissed, certiorari denied 85 S.ct. 1476, 381 U.S. 421, 14 L.Ed. 2d 693 Constitution Law.

A plaintiff may assert a "selective prosecution" equal protection claim. Inturn v. City of Hartford, Comm., D. Conn. 2005, 365 F.Supp. 2d 240. Constitutional Law.

**THE ALLEGED DRUG QUANTITY**

**United States v. Manuel Gonzalez**, 420 F.3d 11 (2nd cir. 2005) the court finally clarified that in light of the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (200), and its own en banc decision in United States v. Thomas, 274 F.3d 655 (2nd Cir 200), drug guantity is always an element of 21 U.S.C. § 841, regardless of whether the actual sentence imposed exeeds the 20 years maximum of offenses involving an unspecified quantity of drugs under § 841

(b)(1)(C). This decision thus puts an end to the Government's non-sensical, SCHIZOPHENIC INTERPRETATION OF § 841 - that quantity some-times is not, an element, (depending post-hoc on whether the actual sentence imposed exceeds 20 years). The take away is that in order fo for a District Judge to imposed a mandatory minimum sentence under one of the aggravated provisions of § 841 (b), a jury must find beyond a reasonable doubt or the defendant must admit the triggering quantity.

In this particular case, Gozalez was charged with conspiracy to distribute 50 grams or more of cocaine base, thus triggering the severr mandatory minimum of § 841 (b)(1)(A). Because he had a prior state drug felony, he was subject to a mandatory minimum of 20 years' imprisonment and a maximum of life imprisoment based on the quantity. Gonzalez entered a guilty plea prior to Apprendi, but disputed the quantity alleged in the indictment. After Apprendi was decided, he moved to wit-hdraw his guilty plea on the grounds that (1) he was misinformed by the District Judge that the quantity issue would be resolved by judge rather than the jury, and (2). there was no factual basis for his plea , since he did not admit to 50 plus grams "element". The court denied the motion and sentenced Gonzalez to the 20 years minimum..

To this question in light of concerns raised by Apprendi, and we repeat the Court's response today: drug quantity is an element that must always be pleaded and proved to a jury or admitted by a defendant to support conviction or sentence on an aggravated offense under § 841(b)(1)(A) or (b)(1(B).

Op. at 35. For emphasis, Judge Raggi notes that the opinion in Gonzalez was circulated to all active members of the Circuit for review before it was filed. Op. at fn. 18.

The crux of Gonzalez is its reading of Apprendi rule as applying to any fact that potentially exposes ths defendant to a greater sentence even if the actual sentence imposed, without a jury finding on the disputed fact, does not exceed the statutiory maximum without fact. Yhe court relied heavily upon the following pages from Apprendi (with its own emphasis); it is unconstitutional for legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is expose."Op. at 26 - 27. Gonzalez also relied on the Supreme Court's recent decision in Shepard v. United States of America, 125 S.ct 1254, 1262 (2005), in which a plurality of the Court ruled that "any fact other than a piror conviction sufficient to raise the limit of the possible federal sentence must be found by a jury. " Op. at. at 31(emphasis in original).

This reading of the Apprendi rule also served to distinguish the case at hand from Harris v. U.S.A., 536 U.S. 545 (2002), in which the Supreme Court, distinguishing Apprendi, held that facts that increase the mandatory minimum under 18 U.S.C. § 924(c) are elements that need to be proved to the jury but are mere sentencing.

The government argued on appeal that the 20 year sentence (imposed as a mandatory minimu), was proper despite Apprendi and despite the lack of either jury finding or an admission regarding drug quantity because this sentence did not exceed the 20 years maximum authorized by § 841(b)(1)(C) for drug offenses involving an indeterminate quantity of narcotics. The Court resoundingly rejected this mix and match reading of § 841: The sentencing range (provided by § 841(b)(1)(C0, and higher

ones provided in § 841 (b)(1)(A) and (b)(1)(B), for quantified crack offenses operate as unfied and independent wholes, (and) cannot be constructed . . . so that drug quantity operates as an element for purposes of determining an applicable sentencing maximum but as a sentencing element for the purpose of determining an applicable mandatory minimum. Op. at 5. Among other things, the court cightly pointed out the Government's reading, in which the question of whether drug quantity is an element depends in each case on what happens at sentencing, after the trial or guilty plea.

"Justice would be well served by a rule that delayed the identification of one ormore elements of a crime untill sentencing. Prosecutors, who must draft indictments and develop evidence to meet thier burden of proof; defendants and their counsel, who must decide whether to challenge the sufficiency of the Governments or pursue plea negotiations; and trial Judges, who must rule on the relevant and sufficiency of evidence, prepare jury instructions, and ensure the factual bases for guilty pleas, all need to know long before sentencing facts must be proved to the jury and which ones can be reserved for resolution by the sentencing judge. Thomas reconstructed § 841 to provide a clear answer factor that can be found by a judge. Judge Raggi rightly criticizes Harris -- " The logic of the distinction draw in Harris between facts that raise only mandatory minimums and those that raise statutory maximum is not easily grasped, "Op. at 25 -- but concludes simply that Harris is distinguishable. This is because under § 924(c), fact (e.g., the brandishing of a firearm), increases only the statutory required minimum but does nothing to alter the maximum (presumed to be life for

all § 924(c) offense). In contrast, § 841(b) "does not use a fact (drug quantity) simply to identify increasing minimum sentence eithin a penalty scheme with a fixed maximum. Instead, when drug quantity raises a mandatory minimum sentence under § 841, it simultaneously raises a corresponding maximum, thereby increasing a defendant's authorized sentencing range above what it would have been if he had been convicted of an identical unquantified drug crime." Op. at 26. And because the Apprendi rule applies to any fact that "increases the prescribed range of penalties to which a defendant is exposed, "it applies to drug quantity under § 841(b).

The Seconf Circuit joins the 4th, 9th, and D.C. Circuits in adopting this reading of § 841(b). Arrayed in the opposing camp are the 1st, 5th 6th, 8th, and 10th circuits, which agree which the Government tha whether drug quantity is an element or a sentencing factor varies in each case and is "revealed only at sentencing." Op. sat 33-34. Given the clear split, and given that prosecutions under § 841(b) constitute a significant portion of the federal criminal dacket, review by the Supreme Court seems well warranted.

2) **THIS COURT SHOULD CONSIDER THE ADVISORY GUIDELINES ALONG WITH ALL RELEVENT FACTORS UNDER 18 USSG 3553(a) and 3661, IN DETERMINING A SENTENCE THAT IS NO GREATER THAN NECESSARY TO ACHIEVE THE PURPOSES OF SENTENCING.**

As this court is aware, in United States v. Booker, 125S.Ct.738(2005), the Supreme Court held that the mandatory guideline sytem created by the Sentence Reform Act of 1984 (SRA), was unconstitutional. Therefore, the appropriate remedial measure required the severance and excision of two provisions of the feseral sentencing statute, including 18 U.S.C. § 3585

made the Guidelines mandatory. See Booker, 125 S. Ct. at 757 (2005) (Breyer, J.). "So modified, the Federal Sentencing Act, see Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., 28 U.S.C. § 991 et seq., makes the Guidelines effectively advisory." 125 S. Ct. 738, 757, As a consequence, the federal sentencing statute still "requires a sentencing court to consider Guidelines ranges,...,but it permits the court to tailor the sentence in light of other statutory concerns as well." Id.

After Booker federal sentencing is vastly different. Treating the Guidelines as advisory requires that the Court consider the Guideline range calculation as merely one of many factors in determining a sentence no greater than necessary to achieve the goals of sentencing set forth in Section 3553(a)(2).

**(A) The § 3553(a) Sentencing Mandate**

Section 3553(a) is comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of Section 3553(a) and the factors to be considered in fufilling that mandate. The overriding principle and basic mandate of § 3553(a) requires districts courts to impose a sentence "sufficient, but

not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2): (a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide just punishment); (b) deterrence; (c) incapacitation (to protect the public from further crimes); and (d) rehabilitation (to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner). United States v. Phelps, 366 F.Supp.2d 580, 587 (E.D. Tenn. 2005).

The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provisio." The parsimony provision is not jsut another factor to be considered along with the others set forth in Section 3553(a). Instead, it sets an independant limit on the sentence a court may impose. See United States v. Denardi, 892 F.2d 269, 276-77 (3rd Cir. 1989). Since §3553(a) requires sentence to be greater than necessary to meet four purposes of sentencing, imposing of sentence greater than necessary to meet those purposes is reversible, even if within guideline range. Id.

In determining the sentence minimally sufficient to comply with the section 3553(a)2) purposes of sentencing, the court must consider several factors listed in Section 3553(a). These factors include: (1)"the nature and circumstances of the offense and the history and characteristics of the defendant;" (2)"the kinds of sentence available;" (3)the guidelines and policy statements issued by the Sentencing Commission, including teh (now non-mandatory) guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution where applicable. 18 U.S.C. § 3553(a)91), (a)(5)-(7). Neither the statute itself

nor Booker suggest that any one of these factors is to be given greater weight than any other factor. However, it is important to remember that all factors are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

This Circuit has held that after Booker, district court must consider a variety of factors in imposing a sentence. **United States v. Crosby**, 379 F.3d 103 (2nd Cir. 2005). These factors include all of the items listed under 18 U.S.C. § 3553(a). Id. Under 18 U.S.C. § 3553(a), the sentencing court is required to consider a host of individual variables and characteristics excluded from those calculations called for by the Guidelines

"Prior to Booker/Fan/Fan, the section 3553(a)requirement that the sentencing judge "consider" all of the factors enumerated in that section had uncertain import because subsection 3553(b)(1) required judges to select a sentence within the applicable Guideline range unless the statutory standard for a departure was met. Now with the mandatory duty to apply the Guidelines excised, the duty imposed by section 3553(a) to consider numerous factors acquires renewed significance." Crosby 397 F.3d at 111. This court can now consider the special circumstances present in teh instant case and sentence the Defendant to a sentence below that which is contemplated by the government and the probation office-regardless of the guideline range presented in the PSI. In addition to consider factors under § 3553(a), sentencing courts have a duty to consider many factors thatn the Guidelines specifically exclude from consideration. As noted by the Second Circuit, "[prior] to Booker/Fanfan, the section 3553(a) requirement that the sentencing judge consider all of the factors enumerated in that section had

uncertain import because subsection 3553(b)(1) required judges to select a sentence within the applicable Guideline range unless the statutory standard for a departure was met. Now, with the mandatory duty to apply the Guidelines excised, the duty imposed by section 3553(a) to "consider" numerous factors acquires renewed significance." United States v. Crosby, 397 F.3d at 111 (2nd Cir. 2005).

For example, under 18 U.S.C. § 3661 "no limitation shall be placed on the infromation concerning the background, character, and conduct of the defendant which a court of the United States may receive and consider for the purpose of imposing an appropiate sentence." United States v. Phelps, 366 F.Supp.2d 580,592-93 (E. D. Tenn. 2005). This statutory language overrides the now-advisory policy statements in Part H of the sentencing guidelines, which list as 'not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. Id.

### B. The Weight Afforded the Guidelines

Importantly, a particular calculation under the Guidelines does not render a sentence within that Guideline range presumptively reasonable. Instead, a sentencing court should consider the Guidelines as merely one of many factors for the court to consider equally in fulfilling the sentencing mandate.

The first two published district court sentencing opinions after Booker presented two very different views regarding how much weight should be given to advisory guidelines. Judge Cassell of the district of Utah ruled that he will continue to give "conside-

able weight' or "heavy weight" to the sentencing guidelines, deviating from the applicable range only "in unusual cases for clearly identified and persuasive reasons." United States v. Wilson, 350 F.Supp. 2d 910, 912, 925 (D. Utah Jan. 13, 2005). See also United States v. Wilson, 355 F.Supp. 2d 1269 (D. Utah Feb. 2, 2005)(re-affirming position and responding to critics of the first Wilson decision).

In a much better reasoned opinion, Judge Adelman of the Eastern District of Wisconsin disagreed, noting that Wilson is inconsistent with the remedial majority in Booker, which "directs courts to consider all of the § 3553(a) factors, many of which the nguidelines either reject or ignore." United States v. Ranum, 353 F.Supp. 2d 984, 986 (E.D. Wis. Jan. 19, 2005). Judge Adelman reasoned that while courts must "seriously consider" the guidelines and give reasons for sentences outside the range, "in doing so courts should not follow the old 'departure' methodology." Judge Adelman went on to state that 'courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the § 3553(a) factors." Id. at 987.

Similarly, United States v. Issa M. Jaber, 362 F.Supp.2d 365 (D. Mass. 2005), the district court in Massachusetts provided an in-depth analysis of why the Wilson approach is wrong "both as a matter of law and fact." Id. at 371. See also United States v. Myers, 353 F.Supp. 2d 1026 (S.D. Iowa Jan. 26, 2005)(PRAtt, J.)(agreeing with Ranum approach and arguing that the Wilson approach is in error because it makes the guidelines, "in effect still mandatory");

United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005)(advisory range is "only one of many factors that a sentencing judge must consider in determining an appropiate individualized sentence"), reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005).

Accordingly, the sentencing judge, after considering §§ 3553 (a) and 3661 factors (including the Guidelines), has full discretion to sentence anywhere within the statutory range. If the Booker Court thought otherwise-if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed-its opinion would surely say so. Booker, 125 S. Ct. at 791 (Scalia, J., dissenting). Likewise, if the remedial majority thought the guidelines had to be given "heavy weight", its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other § 3553(a) factors would violate the Sixth Amendment.

Therefore the Guidelines are only one factor among many in determining a reasonable sentence.

In the instant case, several factors exist, independent of the guideline range calculations, that warrant a sentence below what is contemplated in the PSI in teh instant case. Moreover, given the defendant's acceptance of responsibility, remorse, post-conviction rehabilitation, assistance to the authorities, and age at the time of his release, the sentence recommended in the PSI may be greater than necessary to achieve the goals of sentencing. Although the Defendant is not asking for a departure from the Guidelines, it is that this Court is bound by the sentencing mandate under § 3553(a), and has the authority to, sua spont, impose a sentence independent of the Guidelines in order to fulfill that mandate.

C. Mitigating Factors to be Considered in Determining a Reasonable Sentence Under 18 U.S.C. § 3553(a)(2)

For years, courts across this nation hav recognized the evil of the Federal Guidelines. See, United States v. Stockton, 968 F. 2d 715, 721 (8th Cir. 1992)(guideline sentence "have gone awry" with sentence of 20 years for first time drug offender and is "excessively long" and "greater than necessary" and "connot be justified in a civilized society"); United States v. Andruska, 964 F.2d 640, 646-47(7th Cir. 1992)("the irrationality and draconian nautre of the Guidelines sentencing process is again unhappily reflected in this case"); United States v. England, 966 F2d 403, 410 (8th Cir. 1992)(Although not illegal, the "draconian" sentences in this methamphetamine case "emanate from a guideline scheme gone awry."). United States v. Harrington, 947 F. 2d 956, 964 (D.C. Cir. 1991)(the guidelines "often produce harsh results that are patently unfair because they fail to take account of individual circumstances...)

Now that the Guidelines are merely advisory, this Court has the ability and the discretion to impose a punishment that satifies the goals of sentencing, without having to defer to the harsh and draconian penalties set up in the Guidelines. In the instant case, the Guidelines' range of imprisonment presented in the PSI is 108-135 months, based on a criminal history category I and an offense level 29. The Defendant has requested that the offense level be corrected to reflect a 2 point adjustment under §3E1.1 and a 3 point reduction under § 2D1.1(b)(6) to reflect the Defendant's acceptance of responsibility and the fact he qualifies for the safety

valve, resulting in an offense level 29. Thus, based on a level 29 and a Category I, the Defendant's range of imprisonment should be 87 to 108 months.

Regardless of the calculations under the Guidelines, however, several factors independent of the Guidelines are present that this Court should consider in determining a sentence that is sufficient but not greater than necessary to achieve the sentencing goals of retribution, deterrence, incapacitation, and rehabilitation. See, 18 U. S.C. § 3553(a)(2).

**(1) The Defendant's Post-Offense Rehabilitation and Age Make it Unlikely that the Defendant will be a Recidivist.**

In teh instant case, the Defendant has already been substantially rehabilitated. Therefore, at least one of the purposes of sentencing under § 3553(a)(2) has been achieved.

The defendant has accepted responsibility for his conduct. In fact , he has now admitted to the government all that he knew concerning the offense. Today, after spending 80 months in jail, the defendant stands before this Court humbled, remorseful, and contrite. He has never been in trouble with the law in the past and the past year and a half of confinement has been a shock to the Defendant. He has had many hours to reflect on his conduct and the decisions he has made that lead to his involvement in the instant offense. He recognizes that he made the worst mistake in his life by becoming involved in illegal conduct. His life has been changed forever as a result of his choices and the repercussions of those choices. He realizes that although his crimes are non-violent, his involvement in the instant offense has constributed to the scourge on society caused by substance abuse. The Defendant

finds himself at the absolute bottom, dedicated to never again making the mistakes in judgment that lead to his involvement in the instant offense.

Even when the Guidelines were mandatory, post-offense rehabilitation and the facilitation of the administration of justice were permissible grounds for a downward departure. United States v. Rudolph, 190 F.3d 720, 722-23 (6th Cir. 1999); United States v. Fagan, 162 F.3d 1280, 1284-85 (10th Cir. 1998); United States V. Garcia, 926 F.2d 125 (2nd Cir. 1991); United States v. Volpe, 224 F.3d 72 (2nd Cir. 2000)(noting that activities facilitating the proper administration of justice may form for a downward departure). After the Guidelines were made advisory, this conduct becomes even more relevant at sentencing.

Additionally, the Defendant's remorse and rehabilitation become even more relevant when coupled with the Dewfendant's age, maing it extremely unlikely that the Defendant will commit other crimes in the future. The Defendant is 26 years old facing the sentence of several years in prison and he will be well into (28) years by the time he is released.

The Sentencing Commission has found that for defendants over forty, the risk of recidivism drops dramatically, lessening the need to protect the public from further crimes of the defendant under 3553(a)(2)(C). See, United States Sentencing Commission, Measuring Recidivism: The Criminal history Computation of the Federal Sentencing Guidelines at 12, available at ww.ussc.gov/publicsat/Recidivism. The Commission noted that "[r]ecidivism rates decline relatively consistently as age increases," from 35.5% under age 21, to 9.5% overage 50. After Booker, many courts

have considered a defendant's age as a factor for sentencing unde §3553(a), independent of guidelines. See; Simon v. United States, 361 F.Supp.2d 35, 48 (E.D.N.Y. Mar. 17, 2005); United Statesw v. Thomas, 360 F.Supp.2d 238, 243 (D.Mass. 2005); UNited States v. Nellum, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005).

Remorse is also a factor the Court must consider. See United States v. Fagan, 162 F.3d 1280, 1284-85 (10th Cir. 1998). Under the old departure analysis,"[b]ecause remorse is not a prohibited factor, but a factor already considered in the Sentencing Guidelines, a sentencing court may depart downward if it finds that remorse is present to an exceptional degree." Now that the Guidelines are merely advisory, the fact of a defendant's desire for drug rehabilitation has also been considered as as permissible factor warranting a downward departure by the sentencing court. United States v. Whitaker, 152 F.3d 1238, 1240-41 (10th CIr. 1998). These factors are even more relevant after Bokker.

In the instant case, the Defendant is 26 years old facing a sentence of spending many years incarcerated. He is a non-vioalent drug offender, addicted to alcohol and marijuana, but seeking treatment for that addiction while he is incarcerated. He has learned his lesson and wants nothing more than to be able to return to his family. The Defendant has engaged in substantial self-reflection and recognizes that his decision to become involved in teh instant offense was the worst decision he has made in his life and he is dedicated to never again become involved in illegal conduct. When released from prison, it is unlikely that the defendant will commit another crime.

(3) **<u>THE DECISION IN SUPREME COURT RULING IN KIMBROUGH VS. UNITED STATES U.S. SUPP. NO06-6330</u>**

The question here presented is whether, as the Court of Appeals held in this case, "a sentence"...outside the guidelines range is per se unreasonable when it is based on a disagreement with the sentencing disparity for crack and powder cocaine offenses".

A district judge must include the Guidelines range in the array of the factors warranting consideration. The Judge may determine, however, that, in the particular case, a within the Guidelines sentence is "greater than necessary" to serve the objectives of sentencing. 18 U.S.C.§ 3553 (a) (2000 ed.and SuPP. V). In marking that determination, the Judge may consider the disparity between the Guidelines' treatment of crack cocaine offenses.

Under the advisory Sentencing guidelines. Kimbrough's guilty plea acknwledged taht he was accountable for 56 grams of crack cocaine and 92.1 grams of power cocaine. An offense level of 34 and criminal history category of II yielded a Guidelines Range of 168 to 210 months for the three drug charges.

A sentence in this range, in the District Court Judgement, would have been "grater than necessary" to accomplish the purposes of sentencing set forth in the 18 U.S.C. § 3553 (a). APP.72. As required by the § 3553 (a), the court took into account " the natural and circumstances" of the offense and Kimbrough's "history and characteristics".

The court contrasted Kimbrough's guidelines Ranger of 228 to 270 months with the range that would have applied had he been accountable for an equivalent amount of powder cocaine: 97 to 106 months.

Inclusive of 5 year mandatory minimun for the firearm charge, See USSG §2D1.1 (c): We granted certiorari: 551 U.S. __ (2007), to determine wheter the crack/powder disparty adopted in the United States Sentencing Guidelines has been rendered "advisory" By our decision in Booker.The 100- to- 1 radio yields the sentences for crack offenses involving equal amount of Drugs.

Based on these assumptions, the 1986 Act adopted a"100-to-1 radio" that treated every gram of crack cocaine as the equivalent of 100 grams of power cocaine. The act'sfive year mandatory minimun applies to any defendant account for 5 grams of crack or 500 grams of power , 21 U.S.C. § 841 (b)(1)(B)(ii),(iii):

It's ten years mandatory minimum applies to any defendant accountable foe 50 grams of grams of crack or 5,000 grams of power, § 841 (b) (1) (A) (ii),(iii), 11995 Report 1. the giudeline's drug quality table sets base offense levels ranging from 12, for offenses involving less than 250 milligrams of crack (or 25 grams of powder) to 38, for offense involving more than 1.5 kilograms of crack (or 150 kilograms of power). USSG § 2D1.1(c).

Athough the commission immediately used the 100-to-1 ratio to define base offense levels for all crack and powder offenses, it later determinned that the crack /powder sentencing disparity is generally unwarranted. First, the commission reported, the 100-to-1 radio, rested on assumptions about "the relative harfulness of the twodrugs and the relative prevalence of certain harmful conduct associated with their use and distribution that more recent research and data no longer support.

Most crack cocaine offenses, for example, the commission found that crack is associated with "significantly less trafficking-related violance.... Than previously assumed."

Second , the commission concluded that the crack/powde disparity is inconsistent with the 1986 Act's Goal punishing major drugs traffikers more severely than low-level dealers.

Finally, the commission stated that the crack/powder sentencing diffe-ntial "foster disrespect for and lack of confidence in the criminal justice System" because of a "widely-held perception" that it "promote unwarranted disparty based on race."

The commission have several times sought to achieve a reduction in the crack /powder ratio. in 1995, it proposed Amendments to the Guidelines that would have replaced the ratio 100-to-1- ratio with a 1-to-1 ratio.

This time, However, the commission did not simply await congressional action.

Instead, the commission adopted an ameliorating charge in the guideline See 2007 Report 9. The alteration, which became effective on November 1,2007 reduce s the base offense level associated with each quantily of crack by two levels. See Amendments to the Sentencing Guidelines for United states Courts, 72 Fed.Reg. 23 571-23 52 (2007). this modest amendment yieds sentence for crack offense between two and five times longer than sentences for equal amounts of powder.

Based on the additional reseach and experience with the 100-t0-ratio, the Commission later determined that the crack/powder differential does not meet the objectives of the sentencing Reform Act and the 1986 Act. the commission also found the disparity in consistent with the 1986 Act's goal of the punishing major drug traffickers more severely than low-level dealers and furthermore observed that the differetial fosters a lack of confidental. in the criminal justice system because of a perception that it promotes an unwarranted divergence based on race.

The modest amendment, which became effective on November 1, 2007, yields sentences for the crack offenses between two and five times longer than sent-ences for equal amounts of powder.

Moreover, as a result of the 2007 amendment, which Congress did not disapprove or modify, the guidelines now deviate from the statute's 100-to-1 ratio, advancing a radio that varies from the (different offense levels) between 25 to 1 and 80 to 1.

In the light of these discrete institutional strenghts, a district court's desicion to vary from the advisory Guidelines may attack greatest respect when the sentencing Judges finds a particular case "outside the heartland to which the commission intends individual Guidelines to apply" Rita,551 U.S. The guidelines "fail properly to reflect §3553 (a) considerations" even in a mine-run case.

The crack cocaine Guidelines hoever, present, no occasion for elaborative discussion of this matter because those guidelines do not exemplify the commission's exercise of its characteristic institutional roll.

The 180- month sentence imposed on Kimbrought should survive appellate inspection.

The district court began by property calculating and considering the advisory Guidelines ranges. It is the addressed the relevant § 3553 (a) factors, including the sentencing Commission's report criticizing the 100-to-1- ratio Finally, the court did not purport to establish a ratio of its own, but appropriately framed its final determination in line with § 3553 (a)'s overarching instruction to " impose a sentence sufficient, but not greater than necessary" to accomplish the sentencing goals advanced in § 3553 (a), Under the statute criminalizing the manufacture and distribution of crack cocaine ,21 U.S.C.. § 841, and the relevant Guidelines prescription, § 2D1.1, In accord with the 18 U.S.C. § 3553(a).

**CONCLUSION**

**WHEREFORE,** Defedant /petitioner, pro-se respecfully request, that the Court consider and abide by dictate the new sentencing guideline to crack cocaine offenses retroactive in light of the United States Sentencing Commission pursuant to U.S.S.G § 2d1.1 (a) (c). in the light Kimbrough V. United States, also the section 3553 (a), Which require court to impose a sentence suficient, but not greater than necessary to meet the goals of the sentence.

For all those above reason, it would not advance any of the criteria under current federal sentencing juris-produnce to imprison the defendant for an addictional for lowel of the mandatory minimun of (10) year under. Respecfully request and praus that base on the afore mentioned, issues the sentence be reducing for the district court.

dated this 3rd of January, 2008

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Ann M. Butler, Notary Public
Clearfield Boro, Clearfield County
My Commission Expires Apr. 26, 2009
Member, Pennsylvania Association of Notaries

notary seal

RESPECFULLY SUBMITTED

GILDRANDO VASQUEZ
BOP. No. 05103-070

Ann M. Butler
notary signature

4/26/2009
commission expires on

Ann M. Butler
printed name of notary

CERTIFICATE OF SERVICE

I, Gidrano Vasquez the petitioner acting Pro se, hereby certify that the foregoing motion under 18U.S.C § 3582(c)(2) is furnished to Mr. Joshua L. Gordon, Esq, First Circuit Bar No. 33963 Law office of Joshua L. Gordon 26 S. Main St., # 175 Concord, NH 03301 on this ________ day of _____________, 2008 through the Post office Mail Postage Box at Moshonnon Valley Correctional Center 555 I Cornell Drive, Philipsburg, Pa 16866

Dated: ___________________, 2008

Respectfully Submitted,

Gidrano Vasquez
# 05103-070
Moshonnon Valley Correctional Center
555 I Cornell Drive
Philipsburg, PA 16866

I Gidrano Vasquez declared under penalty of perjury of the United States Law pursuant to 1746,that the following information is to the best of my knowledge.